UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ALI NOWAID and BREEZE CAPITAL GROUP, LLC,

Plaintiffs,

v.

AMERICAN CAPITAL GROUP, LLC,

Defendant.

Case No. 25-cv-05913-RFL

**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT; DISSOLVING PRELIMINARY INJUNCTION; AND DENYING AS MOOT MOTION TO DISSOLVE OR MODIFY PRELIMINARY INJUNCTION**

Re: Dkt. Nos. 58, 68

In September 2022, Plaintiff Ali Nowaid took out a business loan from Defendant American Capital Group, LLC. The loan was secured by a deed of trust in an income-producing investment property and set to mature on October 1, 2024. Plaintiff Breeze Capital Group, LLC, to whom Nowaid assigned his rights, tried to secure replacement financing before the loan's maturity date. According to Plaintiffs' allegations, American Capital thwarted these efforts by refusing to timely issue a payoff demand and forcing the loan to pass maturity—at which point, American Capital added a significant balloon late fee. Plaintiffs did not pay off the remaining loan balance, although they tried to make installment payments which American Capital rejected. In March 2025, American Capital commenced foreclosure proceedings against the property. Four months later, Plaintiffs initiated this action by alleging that American Capital (1) breached the implied covenant of good faith and fair dealing; (2) violated California Civil Code Section 1671; and (3) violated California's Unfair Competition Law ("UCL"), California Business and Professions Code Section 17200. Shortly thereafter, Plaintiffs were granted a temporary restraining order and preliminary injunction prohibiting American Capital from conducting a

trustee's sale on the property. American Capital now seeks summary judgment on all claims and to dissolve or modify the preliminary injunction. For the reasons described below, American Capital's Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**; the preliminary injunction entered on September 2, 2025, is **DISSOLVED**; and the Motion to Dissolve or Modify the Preliminary Injunction is **DENIED AS MOOT**. This Order assumes the reader's familiarity with the facts of the case, the applicable legal standards, and the parties' arguments.

***Evidentiary Issues.*** Plaintiffs object to three pieces of evidence American Capital submitted with its Motion for Summary Judgment: (1) a payoff demand dated September 20, 2024; (2) an October 11, 2024 email from CV3 Financial Services; and (3) a September 19–20, 2024 email chain from Top Escrow. (*See* Dkt. No. 71-3.) Each objection is for lack of personal knowledge, lack of foundation, and hearsay.

At summary judgment, courts focus on the admissibility of the evidence's content, not "on the admissibility of the evidence's form." *Sandoval v. Cty. of San Diego*, 985 F.3d 657, 666 (9th Cir. 2021). The payoff demand's content could be properly presented by witnesses from American Capital and Top Escrow at trial. *See JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1110 (9th Cir. 2016). ("[A]t summary judgment a district court may consider hearsay evidence submitted in an inadmissible form, so long as the underlying evidence could be provided in an admissible form at trial, such as by live testimony."). Plaintiffs' objections to the payoff demand are therefore **OVERRULED**. As to the other documents, the Court does not rely on either piece of evidence in reaching its conclusion. Plaintiffs' objections to the CV3 email and Top Escrow email chain are therefore **DENIED AS MOOT**.

Plaintiffs have also submitted a Request for Judicial Notice (Dkt. No. 72), which American Capital did not oppose. Both of the attached documents are official records from the Alameda County Recorder, and their authenticity has not been challenged. (*Id.* at 2 (all citations refer to ECF pagination).) Judicial notice is appropriate for these "undisputed matters of public record." *Disabled Rts. Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 866 n.1 (9th Cir.

2004). Plaintiffs' Request for Judicial notice is **GRANTED**.

***Implied Covenant Claim.*** No genuine disputes of material fact remain as to Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing. Three theories underlie this claim: first, that American Capital withheld payoff demands to prevent Plaintiffs from paying off the loan before maturity; second, that American Capital further hindered Plaintiffs' payoff ability by adding an excessive balloon fee after maturity; and third, that American Capital interfered with performance by refusing to accept installment payments after maturity.

Most of the prior litigation in this case, including the temporary restraining order and preliminary injunction, was based on the first theory. (*See, e.g.*, Dkt. No. 44.) Unrebutted evidence now shows that American Capital did issue a loan payoff demand before maturity. (*See* Dkt. No. 68-5.) Specifically, American Capital issued a payoff demand dated September 20, 2024, for $782,145.35, which was good through October 18, 2024, and bears a fax stamp dated September 23, 2024. (*Id.*) Citing to the same document, Plaintiffs admit in their briefing that "[t]he payoff demand dated September 20, 2024, and effective through October 18, 2024, included no balloon late charge." (Dkt. No. 71 at 22; *see also id.* at 7.) Although Plaintiffs argue there are disputed issues of fact as to when the demand was actually sent, Plaintiffs would bear the burden of proof at trial to show that American Capital failed to timely send the demand, and they identify no evidence sufficient to create a genuine dispute of material fact as to that issue. *See Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) ("We rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment."). Though Ahmad Nowaid's declaration states generally that efforts to obtain "a timely and accurate payoff demand . . . were consistently obstructed," he does not aver that he failed to receive the September 20 demand. (Dkt. No. 71-1 at 121.) In sum, American Capital has shown that a payoff demand was sent prior to loan maturity—contradicting the primary basis for Plaintiffs' claim—and Plaintiffs do not dispute this fact. Since American Capital did not interfere with Plaintiffs' ability to seek new funding before maturity, American Capital did not fail or refuse "to discharge contractual responsibilities" in such a way that "unfairly frustrate[d] the agreed

common purposes and disappoints the reasonable expectations of the other party." *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1395 (1990).

Plaintiffs' remaining theories fail because the covenant "cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement." *Guz v. Bechtel Nat'l Inc.*, 24 Cal. 4th 317, 349–50 (2000). The loan agreement expressly includes the balloon late charge, and it does not include any mechanism for incremental payments post-maturity. (*See* Dkt. No. 71-1 at 5–7 (describing the "Balloon late charge" of $76,900 that will be charged as liquidated damages).) It states that the loan is "payable in 24 partially amortizing installments of $7,132.45 each, beginning on 11/01/2022, and continuing monthly on the first day of each month thereafter until maturity, 10/01/2024, ***at which time all sums of principal and interest then remaining unpaid shall be due and payable in full***." (*Id.* at 5 (capitalization modified, emphasis added).) Plaintiffs' balloon fee and post-maturity payment arguments arise from disagreements with the terms themselves, not with American Capital's frustration of any term. Since the covenant of good faith may not "be read to prohibit a party from doing that which is expressly permitted by an agreement," these theories are unavailing. *Carma Devs. (Cal.), Inc. v. Marathon Dev. California, Inc.*, 2 Cal. 4th 342, 374 (1992). Summary judgment is therefore granted in favor of American Capital on Plaintiffs' implied covenant claim.

***Section 1671 Claim.*** Summary judgment is not appropriate on the overall Section 1671 claim, which concerns the liquidated damages clause governing the balloon late fee. Under California law, "[a] provision in a contract liquidating the damages for the breach of the contract is valid unless the party seeking to invalidate the provision establishes that the provision was unreasonable under the circumstances existing at the time the contract was made." *Poseidon Development, Inc. v. Woodland Lane Estates*, LLC, 152 Cal. App. 4th 1106, 1115 (2007) (quoting Cal. Civ. Code § 1671(b)). Liquidated damages clauses should "generally be considered unreasonable, and hence unenforceable under section 1671(b)" where they bear "no reasonable relationship to the range of actual damages that the parties could have anticipated

would flow from a breach." *Krechuniak v. Noorzoy*, 11 Cal. App. 5th 713, 722 (2017). In *Poseidon*, the California Court of Appeal analyzed a promissory note that provided for regular installment payments, a balloon final payment, and a late-charge provision that was intended "to cover such costs as 'processing and accounting charges'" wherever an installment was paid late. 152 Cal. App. 4th at 1115. Were the balloon payment to be considered an "installment" subject to the late-charge provision, "overdue payment of an installment of $6,146.66 would have resulted in a late charge of $614.67," while "overdue payment of a final payment of $776,146.66 would result in a late charge of $77,614.67." *Id.* The court explained that "[t]here is no reason to believe that processing and accounting expenses caused by failure to make an installment payment would vary appreciably depending on the amount of the overdue payment" and thus found that the late-charge provision, if applied to the balloon fee, "could not possibly be considered a reasonable estimate of the damages contemplated by a breach. Rather, it would be an unenforceable penalty provision." *Id.* It did not matter that the promissory note had provided that the "parties agree that this late charge represents a fair and reasonable estimate of the costs that payee will incur by reason of late payment." *Id.* at 1112. The court stated, "as a matter of law a late charge provision covering administrative expenses that amounts to $614.67 for one late payment and $77,614.67 for another is not a reasonable attempt to estimate actual administrative costs incurred, whether or not it is customary in the industry." *Id.* at 1116.

The loan agreement's effect here is nearly identical. For missed installments, a late fee equal to 10% of the delinquent payment is added. (Dkt. No. 71-1 at 5.) For a standard $7,132 installment, that would equate to $713. (*See id.*) If the balloon payment is late, however, "the borrower will be charged $76,900.00 as liquidated damages." (*Id.* at 6.) Below the late charge and ballon late fee provisions, the agreement states, "payments under this Note will cause Lender to incur additional expenses in servicing and processing the Loan and that it is extremely difficult and impractical to determine those additional expenses. Borrower agrees that the late charges provided for in this Note represent fair and reasonable estimates taking into account all circumstances existing on the date of this Note, of the additional expenses Lender will incur by

reason of such late payments." (*Id.*) As in *Poseidon*, these provisions together lead to "a late charge provision covering administrative expenses that amounts to [$713] for one late payment and [$76,900] for another." 152 Cal. App. 4th at 1116. Because these forms of liquidated damages are frequently found to violate Section 1671, summary judgment is not appropriate on this claim. *See, e.g.*, *California Bank & Tr. v. Shilo Inn*, 2012 WL 5605589, at *5 (D. Or. Nov. 15, 2012) (finding default interest provisions invalid); *In re Moon*, 639 B.R. 190, 201 (Bankr. N.D. Cal. 2022), *aff'd*, 648 B.R. 73 (B.A.P. 9th Cir. 2023), *aff'd*, No. 23-60006, 2024 WL 1635549 (9th Cir. Apr. 16, 2024); *see also Honchariw v. FJM Priv. Mortg. Fund, LLC*, 83 Cal. App. 5th 893, 900 (2022) ("The amount set as liquidated damages must represent the result of a reasonable endeavor by the parties to estimate a fair average compensation for any loss that may be sustained. In the absence of such relationship, a contractual clause purporting to predetermine damages must be construed as a penalty.") (citation and quotation marks omitted).

However, summary judgment is appropriate as Plaintiffs' claims for monetary and injunctive relief under Section 1671. Affirmative relief may generally be sought under Section 1671 "to recover fees paid." *Beasley v. Wells Fargo Bank*, 235 Cal. App. 3d 1383, 1400 (Ct. App. 1991). Consumers may "seek monetary relief, both offensively and defensively, from liquidated damages." *Id.* at 1401. But here, Plaintiffs seek affirmative relief relating to fees they never paid. It is undisputed that Plaintiffs have not paid the liquidated damages fee. Nor have Plaintiffs shown that they suffered any harm caused by the addition of the liquidated damages provision. They do not show, for example, that they could have secured funding post-maturity if the liquidated damages charge was removed, or that they paid any additional amount after the charge was added. In fact, Plaintiffs tried to continue paying their regular pre-maturity installments after the loan matured and the fee was added. (*See* Dkt. No. 71-1 at 121.) Monetary relief would thus be inappropriate because there has been no monetary harm or enrichment. Injunctive relief is also unwarranted because Plaintiffs have put forth no evidence showing they are able to pay the loan absent the charge at issue or would otherwise face irreparable harm.

Declaratory relief, however, is available as to the validity of the liquidated damages

provision. *See Garrett v. Coast & S. Fed. Sav. & Loan Assn.*, 9 Cal. 3d 731, 738 (1973) ("Inasmuch as this increased interest charge is assessed only upon default, it is invalid unless it meets the requirements of section 1671."). Summary judgment is thus granted as to Plaintiffs' claim for monetary damages and injunctive relief, and denied as Plaintiffs' claim for declaratory relief under Section 1671.

***UCL Claim.*** Finally, Plaintiffs' UCL claim fails for lack of standing. To satisfy the UCL's narrow standing requirements, a plaintiff must "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) show that the economic injury was the result of, i.e., *caused by*, the unfair business practice or false advertising that is the gravamen of the claim." *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322 (2011) (emphasis in original). UCL standing thus requires a plaintiff to have "'suffered injury in fact and . . . lost money or property as a result of the unfair competition.'" *Rubio v. Cap. One Bank*, 613 F.3d 1195, 1203 (9th Cir. 2010) (quoting Cal. Bus. & Prof. Code § 17204).

Initially, Plaintiffs established UCL standing based on the likely loss of the property through foreclosure, based on their payoff demand delay theory. (*See* Dkt. No. 44 at 3–4.) That theory is now contradicted by record evidence showing American Capital sent the payoff demand, with no liquidated damages charges, prior to loan maturity. And Plaintiffs have put forth no additional evidence showing that American Capital has otherwise interfered with Plaintiffs' ability to pay off the loan and avoid foreclosure.

Nothing in the record shows that the liquidated damages clause—the only viable theory remaining—caused the threat of foreclosure. The Notice of Default states that "payment has not been made of: The balance of principal and interest which became due on 10/1/2024, along with late charges, foreclosure fees and costs, and legal fees plus interest and / or advances that have become due." (Dkt No. 72 at 7.) Though the ultimate cost increased after maturity, the "balance of principal and interest became due" on October 1, 2024, and Plaintiffs have not yet paid or shown even an ability to pay the original loan balance. The threat of foreclosure remains, but the causal chains tying American Capital's unfair business practice to that threat have been severed.

*See Daro v. Superior Ct.*, 151 Cal. App. 4th 1079, 1099 (2007), *as modified on denial of reh'g* (July 3, 2007) ("In short, there must be a causal connection between the harm suffered and the unlawful business activity. That causal connection is broken when a complaining party would suffer the same harm whether or not a defendant complied with the law. Here, the lack of causation is illustrated by the fact the tenants would suffer the same injury regardless of whether the owners complied with or violated the [law].") Because Plaintiffs did not pay their debt before maturity and have not shown their ability to pay the principal debt, Plaintiffs have not carried their burden to show a genuine dispute as to whether they would suffer the same foreclosure regardless of the liquidated damages clause. Without causation, the threat of foreclosure no longer satisfies UCL standing.

Looking beyond foreclosure, the record shows that Plaintiffs have paid no money and lost no property as a result of the liquidated damages clause. Plaintiffs argue that the increase in their debt owed to American Capital suffices as monetary loss, based on two cases which found UCL standing after mortgage lenders increased the borrowers' debts. In *Lane v. Wells Fargo Bank, North America*, the court found at class certification that a force-placed insurance on a home mortgage constituted "an economic injury and lien upon [the borrower's] property sufficient to confer standing to assert a claim under the unfair competition law." No. C 12-04026 WHA, 2013 WL 3187410, at *11 (N.D. Cal. June 21, 2013). Borrowers who had "been excused from payment of their loan, and associated expenses, such as through foreclosure," were excluded. *Id.* In *Vega v. Ocwen Financial Corporation*, a monthly fee was added to the borrower's mortgage which "diminishe[d] the equity she obtained in her home." 2015 WL 1383241, at *8 (C.D. Cal. Mar. 24, 2015). The court found this sufficient at the motion to dismiss stage to show that the plaintiff's "present or future property interest diminished." *Id.*

On the facts here, Plaintiffs have not shown that the liquidated damages fee diminished their property interest or otherwise caused monetary loss. First, Plaintiffs have not paid any money towards the liquidated damages charge. Plaintiffs have in fact tried to continue paying their pre-maturity monthly installments, which American Capital has returned. Second, because

the loan is secured by the property, the property is all that could be lost. And, as described above, the property would be lost regardless of the liquidated damages provision. The factual record does not show any loss of money or property as a result of the liquidated damages clause. Accordingly, Plaintiffs do not have UCL standing and summary judgment is granted on the UCL claim.

***Preliminary Injunction.*** The preliminary injunction was issued based on the likelihood of success on Plaintiffs' UCL claim. Summary judgment has since been granted on that claim and on all claims arising out of the alleged payoff demand delay, as well as all claims for injunctive relief. With only the declaratory relief claim under Section 1671 remaining, there is no longer any basis to support the preliminary injunction. *See Akiyama v. U.S. Judo Inc.*, 181 F. Supp. 2d 1179, 1189 (W.D. Wash. 2002) ("Having determined that plaintiffs cannot prevail on their claims, preliminary injunctive relief is no longer appropriate."). The preliminary injunction entered on September 2, 2025, (Dkt. No. 44) is dissolved and the motion to dissolve or modify preliminary injunction (Dkt. No. 58) is denied as moot.

***Conclusion.*** American Capital's Motion for Summary Judgment is **DENIED** as to the Section 1671 claim for declaratory relief and **GRANTED** in all other respects. The preliminary injunction entered on September 2, 2025, is **DISSOLVED** and American Capital's Motion to Dissolve or Modify the Preliminary Injunction is **DENIED AS MOOT**. In light of the significant narrowing of the case, the current case scheduled is **VACATED**. The parties are **ORDERED** to file a proposed case schedule by **October 26, 2026**, which shall include a proposed timeline for further court-sponsored mediation.

**IT IS SO ORDERED.**

Dated: September 11, 2026

RITA F. LIN
United States District Judge